IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RACHEL R. PETTY                                                           PLAINTIFF

v.                            Case No. 5:17-cv-5119

CANCER TREATMENT CENTERS OF AMERICA
PROFESSIONAL CORPORATION OF OKLAHOMA, INC.; and
SOUTHWESTERN REGIONAL MEDICAL CENTER, INC.            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court is a Motion to Transfer Venue (Doc. 10) submitted by Defendants Cancer Treatment Centers of America Professional Corporation of Oklahoma, Inc. ("CTCA") and Southwestern Regional Medical Center, Inc. ("Southwestern"). Plaintiff Rachel R. Petty ("Petty") has filed a response in opposition (Doc. 11). The Court heard oral arguments during a case management conference held on August 24, 2017. For the reasons given below, Defendants' Motion to Transfer is **GRANTED**.

### I. BACKGROUND[1]

Plaintiff, a resident of Springdale, Arkansas, was diagnosed with Non-Hodgkin's Lymphoma in 2008. After undergoing successful treatment and being in remission for approximately seven years, Petty learned that her cancer had returned. Her oncologist recommended that she undergo a stem cell transplant. Around that time, Petty saw a television commercial produced by Defendant CTCA advertising its cancer treatment

---

[1]Because of the number of visits Plaintiff made to CTCA facilities in Tulsa and the centrality of those visits to each of the causes of action she asserts against Defendants, the Court will recount Plaintiff's experiences in detail. All allegations are taken from Plaintiff's Complaint (Doc. 3).

facility in Tulsa, Oklahoma. After conducting research on the CTCA, speaking with CTCA employees on the telephone, receiving additional information from CTCA, and being notified of her insurance company's agreement to treat CTCA as an in-network provider, Petty decided to seek treatment from the CTCA in Tulsa.

Petty's treatment at CTCA consisted of two distinct phases and repeated travel from Arkansas to Tulsa. In phase one, which occurred between April and June of 2015, she received treatment with "RICE"[2] to shrink a tumor in her neck. Upon successfully completing that phase, Petty returned to CTCA in Tulsa to begin the 'Autologous Transplant for Non-Hodgkin's Lymphoma', a separate six-step process.

It was during phase two that Petty allegedly suffered the injuries central to her Complaint. In step one of phase two, Petty had a catheter surgically implanted. The following day, she reportedly developed itching, pain, and soreness in the location where the surgical dressing had been placed, problems that were allegedly due to the use of a latex-based dressing that Petty was allergic to. Two days after the catheter was placed, Petty was notified that an additional surgery was necessary because the catheter that had been used was of a different type than was required for bone marrow transplants. Petty underwent a second surgery on July 23, 2015, to remove the first catheter and replace it with the correct catheter. Petty alleges that Defendants surreptitiously billed for these procedures in order to maximize their charges. Following the completion of the corrective surgery, Petty received mobilization-based treatment with Cytoxan as part of step two of the transplant process.

---

[2] "RICE" appears to be the name given to a type of chemotherapy treatment designed to shrink cancerous cells in patients before the patient undergoes stem cell transplant treatment.

Following this treatment, Petty began step three, which involved the removal of stem cells using an apheresis machine. The first day of that process, which began on September 8, 2015, was without incident. However, the following day's continuation of the apheresis process had to be aborted when CTCA's machine failed. A day later, CTCA officials determined that they could continue the apheresis process by using personnel and equipment from the Oklahoma Blood Institute ("OBI").[3] After successfully removing Petty's harvested stem cells, OBI personnel bagged and labeled the cells and tendered them to CTCA's stem cell coordinator, Yana Zhang, for storage at the CTCA facility.

Subsequently, the freezer at CTCA used to store Petty's stem cells malfunctioned. CTCA, again relying upon the OBI, requested a courier come to the CTCA facility in Tulsa, collect the two bags of stem cells, and transport them to the OBI facility in Oklahoma City for storage. Sometime that same day, when the courier arrived back at the OBI facility in Oklahoma City, the vessel that was supposed to be holding Petty's stem cells was opened and it was discovered that one of the bags had no information identifying either the contents of the bag or from whom the contents had been taken. Five days later, Petty's attending physician at CTCA called her to report this and, understandably upset, Petty allegedly told the physician that she would need time to think about her options. In the wake of these events, Petty decided to forego additional treatment at the CTCA and opted instead to finish her stem cell transplant procedure at the University of Kansas Medical facility in Kansas City, Kansas. Petty alleges that Defendants subsequently requested she pay, out-of-pocket, around $109,000 for costs not covered by her insurance policy.

---

[3] The Complaint does not specify whether the OBI equipment and personnel were brought from the OBI located in Tulsa or the OBI in Oklahoma City.

On May 26, 2017, Petty filed her initial complaint in the Circuit Court of Benton County, Arkansas, asserting causes of action including gross medical negligence, fraud, violation of the Arkansas Deceptive Trade Practices Act, violation of Oklahoma's Consumer Protection Act, and outrage. Defendants removed the action to this Court (Doc. 1) and subsequently filed the present Motion to Transfer (Doc. 10).

## II. DISCUSSION

The change of venue statute, 28 U.S.C. § 1404(a), provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." Although the statute provides three general categories of factors courts must consider when evaluating a motion to transfer, *Terra Int'l v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997), the Eighth Circuit has declined to offer an exhaustive list, *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010). Rather, district courts have discretion under section 1404(a) "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Moreover, because "federal courts give considerable deference to a plaintiff's choice of forum . . . the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l*, 119 F.3d at 695.

Before considering the factors central to any 1404(a) analysis, this Court must first determine that the Northern District of Oklahoma, the requested transferee venue, is a district where the action could originally have been brought. 28 U.S.C. § 1404(a). Under the general venue statute, 28 U.S.C. § 1391(b), venue is proper in, among other places, a "judicial district where any defendant resides, if all defendants are residents of the State

in which the district is located." 28 U.S.C. § 1391(b)(1). The two Defendants in the present case are both Oklahoma corporations and, under the venue statute, are considered residents of any judicial district in which they are subject to a court's personal jurisdiction. 28 U.S.C. § 1391(c)(2). Because both Southwestern and CTCA are Oklahoma corporations located in Tulsa, Oklahoma, which is within the boundaries of the Northern District of Oklahoma, they are each subject to personal jurisdiction in that District. As a result, this action could initially have been brought there.

Since this threshold inquiry has been satisfied, the Court must next determine whether transfer is warranted "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The Court will separate its analysis into a "convenience" section and an "interest of justice" section.

### A. Convenience Factors

As noted above, courts have considered a host of relevant factors that directly bear upon the convenience of litigating in a particular court. These factors include: 1) the convenience of the parties, 2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, 3) the accessibility to records and documents, 4) the location where the conduct complained of occurred, and 5) the applicability of each forum state's substantive law. *Terra Int'l*, 119 F.3d at 696. Of the convenience factors, many courts consider the convenience of witnesses to be the most important. *See* 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Fed. Practice and Procedure* § 3851 n.1 (4th ed. 2017) (listing cases). The Court will consider each factor in turn.

### 1. Convenience of the Parties

Here, the convenience of the parties is neutral with respect to transfer. While it would, of course, be more convenient for the named Defendants to litigate this case in the Northern District of Oklahoma, as that is where they are located, it would likely be at least as—if not more—inconvenient for Petty to litigate in Oklahoma.[4] In considering this factor, courts must remember that "merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." *Terra Int'l.*, 119 F.3d at 696-97. Thus, the Court finds that this factor does not weigh in favor of transfer.

### 2. Convenience of Witnesses

This factor strongly weighs in favor of transfer to the Northern District of Oklahoma. Given the information that has been submitted by the parties in the briefs and at oral argument, the Court finds that many, if not most, of the witnesses whose testimony will be material to the resolution of this case are located in Oklahoma, as they are employees of CTCA and the OBI who have direct knowledge of the events allegedly giving rise to Defendants' liability. After all, Plaintiff's Complaint details a long string of injuries, all of which allegedly occurred in Tulsa at the hands of employees of the Defendants, and many of which were witnessed by employees of the OBI. Indeed, Plaintiff's counsel readily admitted during the case management hearing that the liability witnesses are located in Tulsa. As a result of the nature of this case, these Tulsa-based witnesses will likely be crucial to establishing or refuting Defendants' liability.

---

[4] The Court has considered Petty's argument that she will have to seek local counsel in Oklahoma if this case is ultimately transferred. While credited, the Court also recognizes that the Defendants would bear substantial costs as well were they required to litigate here. Ultimately, this factor favors neither party.

Given the location of these witnesses in Tulsa, the Court is particularly concerned about this matter devolving into a "trial by videotape" were it to be held in Fayetteville. This Court's subpoena power likely could not reach many of the most important liability witnesses who have been identified by Defendants, including the doctors, nurses, and technicians who worked with Petty during her numerous treatments in Tulsa. The fact that they are employees of the Defendants does nothing to broaden this Court's subpoena power over them. This problem is eliminated entirely, however, by a transfer to the Northern District of Oklahoma, where that Court's subpoena power would most certainly reach these material witnesses as they work and live within the range contemplated by Rule 45.

Moreover, the Court is mindful that these witnesses,[5] all of whom work as medical professionals either for CTCA or OBI, are different from other witnesses in that their prolonged absence from their jobs would affect not only themselves and their employers, but also the patients they are treating. These doctors, nurses, and technicians are part of functioning hospitals responsible for treating patients with life-threatening conditions.

---

[5] Petty argues in opposition to the Defendants' motion that Defendants must adduce extensive proof suggesting the costs to these witnesses from being forced to travel here. However, while Defendants *do* bear the burden of showing that transfer is warranted, Plaintiff seeks to heighten that burden. The fact is that the Eighth Circuit and many courts in this District have granted (or upheld) transfer without this extensive documentary evidence—especially since transfer motions, as in this case, often are presented to courts at the outset of litigation, well before witness lists have been finalized. *See, e.g., Miller v. Christus St. Michael Health Sys.*, 2017 WL 2266887, at *3 (W.D. Ark. May 23, 2017) (granting transfer where Court found that transfer "would be more convenient for the majority of the witnesses involved in the case, *presumably* the CHRISTUS employees who attended to Rashad Miller") (emphasis added); *In re Apple, Inc.*, 602 F.23d 909, 913-14 (8th Cir. 2010) (granting mandamus and ordering transfer where the Eighth Circuit found that many of Apple's *potential witnesses* would *likely* be attorneys who worked in their California headquarters who would be inconvenienced by leaving work and family to testify in Arkansas).

Their absence from their jobs certainly is a factor that the Court should consider in a transfer analysis.

In an attempt to downplay how significantly skewed this factor is in favor of transfer, Plaintiff's counsel argued both that the facts upon which liability turned were readily admitted to by Defendants and that 'many' of the material witnesses are located in Kansas City. (Doc. 11, p. 12). As to the first claim, the briefings and oral arguments of the Defendants suggest otherwise. No concessions as to liability have been made and, therefore, these witnesses, all of whom are likely located beyond the reach of this Court's subpoena power, will likely be crucial since they are the only ones with direct knowledge of the events that caused Plaintiff's injuries. As to Plaintiff's second point, the Court is not persuaded that these witnesses in Kansas City are in any way relevant to determining whether Defendants are liable for conduct that occurred over a period of months at Defendants' facility in Tulsa, Oklahoma. Even if some of these witnesses *are* material, their location in Kansas does little to alter the 1404(a) analysis as they are going to be inconvenienced regardless of whether the trial is held in Tulsa, Oklahoma, or Fayetteville, Arkansas.

Although the sheer number of witnesses is not the metric by which convenience is assessed, Defendants have persuasively demonstrated that, both *quantitatively* and *qualitatively*, the witnesses located in Oklahoma, who would unquestionably be inconvenienced were this litigated here, are more central to this case than the other witnesses suggested by Plaintiff. This is especially true given Plaintiff's admission during oral argument that, but for the allegedly negligent medical treatment that occurred in

Oklahoma, there would not be any basis for any of her causes of action. Thus, the most important transfer factor, the convenience of witnesses, strongly favors transfer.

### 3. Location of Documents and Evidence

Similar to the location and convenience of witnesses, the location of documents crucial to resolution of this case weighs in favor of transfer. While it is true that the digital age has made storage and transmission of evidence possible and less burdensome, courts still consider the location and access to evidence under the 1404(a) analysis. *See, e.g., In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008). Because all of the documents regarding Defendants' treatment of Plaintiff, including information related to Defendants' allegedly deceptive billing practices, are located within the Northern District of Oklahoma, the Court finds that this factor weighs in favor of transfer.

### 4. Location Where Harmful Conduct Occurred

In evaluating the location where the allegedly harmful conduct occurred, the Court finds that this factor weighs heavily in favor of transfer. Apart from CTCA's solicitation of business through TV advertisements, everything giving rise to Plaintiff's causes of action occurred outside of Arkansas, and nearly all relevant events occurred within the Northern District of Oklahoma. Because all of the allegedly negligent conduct on the part of Defendants took place in Oklahoma, this factor strongly favors transfer.

### 5. Application of State Substantive Law

As for the potential application of each jurisdiction's substantive law, the Court would first note that, regardless of whether this case is transferred, Arkansas' choice-of-law rules will ultimately govern which state's substantive law applies. That is because, if the case is maintained here, the Court, whose jurisdiction is based upon the diversity of

the parties, would be bound to apply the forum state's substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). That would mean that Arkansas' choice-of-law rules would apply. A similar result would occur if this case is transferred, as the Supreme Court held in *Van Dusen v. Barrack* that "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue [as a] change of venue . . . should be, with respect to state law, but a change of courtrooms." 376 U.S. 612, 639 (1964).

Thus, in either case, it will be Arkansas' choice-of-law rules that govern which state's substantive law will apply. However, just because Arkansas choice-of-law rules apply to this case *does not* mean that Arkansas substantive law will provide the law for the underlying causes of action that Plaintiff asserts. Rather, as the Arkansas Supreme indicated in *Ganey v. Kawasaki Motors Corp., USA*, Arkansas now relies both upon the doctrine of *lex loci delecti* and the Leflar choice-influencing factors[6] in deciding which state's substantive law to apply. 366 Ark. 238, 251 (2006). Therefore, it may very well be, and seems likely, that application of Arkansas' choice-of-law rules will eventually result in the application of Oklahoma substantive law to the underlying action—as that is where the alleged injuries occurred and as the Leflar factors likely would not change the analysis. Thus, the Court finds that this factor also weighs in favor of transfer.

---

[6] The Leflar choice-influencing factors are: 1) predictability of results, 2) preservation of interstate or international order, 3) simple application by the judiciary, 4) the forum's governmental interests, and 5) application of the better law. While Plaintiff argues that there are some benefits of Arkansas' law that would not be available if Oklahoma substantive law applied, the Court is not persuaded that this factor, alone or in tandem with the others, would supplant the initial application of the *lex loci delecti* principle. Of course, the Court is not ruling that Oklahoma law applies, but it mentions this to indicate that there appears to be nothing about this factor that would tip the transfer analysis in favor of an Arkansas forum.

Ultimately, the convenience factors strongly weigh in favor of transfer to the Northern District of Oklahoma. The alleged injuries occurred there, many of the most important witnesses necessary for resolving this case are located in Oklahoma, including material witnesses over whom the Court's subpoena power may not extend (but who could be reached if the case were transferred), crucial documents in this case are also located within the Northern District of Oklahoma, and Oklahoma substantive law will likely govern this case. Therefore, on balance, the convenience factors weigh strongly in favor of transfer.

### B. Interest of Justice Factors

In considering whether transfer is in the interest of justice, courts consider factors such as 1) judicial economy, 2) the plaintiff's initial forum choice, 3) the comparative costs to both parties of litigating in the different forums, 4) enforceability issues for any resulting judgment, 5) obstacles to a fair trial, 6) conflict of law concerns, and 7) the advantage of having a local court determine questions of local law. *Terra Int'l*, 119 F.3d at 696.

### 1. Judicial Economy

Judicial economy concerns weigh strongly in favor of transfer. Courts in the Western District of Arkansas have held that "the administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of operative facts." *Beijing Zhongyi Zhongbiao Elec. Info. Tech. v. Microsoft Corp.*, 2013 WL 3808009, at *5 (W.D. Ark. July 22, 2013). *See also Miller*, 2017 WL 2266887, at *4 (same). As noted above, nearly all of the operative facts in this case occurred in Tulsa, Oklahoma, making transfer to the Northern District of Oklahoma appropriate.

## 2. Plaintiff's Initial Forum Choice

As to Plaintiff's choice of forum, Plaintiff certainly made clear her desire to litigate this case in Arkansas. From initially filing suit in Benton County to her response in opposition to the present motion, it is obvious that she would prefer to remain in her home state. Despite citing to cases decided on *forum non conveniens* grounds, where the discretion afforded to district courts is less than in the 1404(a) transfer context, *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955), Plaintiff is correct that federal courts afford considerable deference to a plaintiff's initial choice of forum.[7]

However, courts, including those in this District, have held that when the conduct central to the complaint occurred outside of the chosen forum, plaintiff's initial choice is entitled to less weight. *Miller*, 2017 WL 2266887, at *4. Accordingly, although Plaintiff's initial choice of an Arkansas forum weighs against transfer and is an important consideration for the Court, it is not a dispositive factor and must be balanced against the other factors in determining whether to transfer.

## 3. Comparative Costs of Litigating

This factor is neutral or, at best for Plaintiff, weighs slightly against transfer. Because of the resource imbalance between the Plaintiff and Defendants, it is likely that

---

[7] Unlike in the 1404(a) transfer context, a plaintiff's choice of forum in *forum non conveniens* cases has been given enormous, sometimes dispositive weight. For instance, in *Piper Aircraft v. Reyno*, the Supreme Court held that, in *forum non conveniens* cases, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors *clearly* point towards dismissal and trial in the alternate forum." 454 U.S. 235, 255 (1981) (emphasis added). However, in the transfer context, as the Supreme Court noted in *Norwood*, "Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience." 349 U.S. at 32.

it would be more burdensome on the Plaintiff to litigate in Oklahoma than for Defendants to litigate here. But, as noted above, the fact that the witnesses and documentary evidence relevant to this action are located in the Northern District of Oklahoma means that Defendants will still pay a hefty price to produce and, should a trial warrant it, transport this original evidence along with all of the required witnesses to Arkansas. Thus, what might at first blush seem to strongly favor keeping the action here is largely neutral.

### 4. Enforcing Judgments, Conflicts of Laws, Obstacles to a Fair Trial

Both parties have attempted to advance arguments regarding potential problems with enforcing judgments, conflict of laws, or obtaining a fair trial in either of the two jurisdictions. However, the Court finds that these factors, especially considering the information submitted by the parties, are at best neutral with respect to transfer and are far outweighed by the other factors discussed herein.

### 5. Having a Local Court Decide Local Issues in Accordance with Local Law

Finally, having a local court decide questions of local law strongly favors transfer. Courts around the country, including here in the Western District of Arkansas, have recognized that allowing a state to regulate allegedly negligent businesses operating within their boundaries is an important factor. For instance, in a case from this District involving very similar allegations of negligent medical care rendered to an Arkansas resident by an out-of-state (Texas) hospital, the court held that "[t]he State of Texas certainly has more of an interest in regulating and/or remedying alleged negligent medical care provided by a Texas hospital located in Texas." *Miller*, 2017 WL 2266887, at *4. Similarly, the state of Oklahoma has a much stronger interest in regulating and correcting potentially negligent medical care performed by CTCA and Southwestern, both of which

are Oklahoma-based hospitals located within the Northern District of Oklahoma. Because Arkansas' choice-of-law rules, including reliance on *lex loci delecti*, also likely militate in favor of applying Oklahoma law to the underlying causes of action, the Court finds that this factor weighs heavily in favor of an Oklahoma court deciding this matter.

While the balance of the interest of justice factors is not quite as lopsided in favor of transfer as the convenience factors, this Court finds that they still, when considered together, favor transfer. Considering the convenience and interest of justice factors in tandem, this Court finds that Defendants have met their substantial burden of showing that transfer would best serve the convenience of the witnesses and parties and be in the interest of justice. The Court will therefore **GRANT** Defendants' Motion to Transfer Venue to the Northern District of Oklahoma.

There is one final matter before the Court. Perhaps seeing the writing on the wall, in the joint Rule 26(f) report, the Plaintiff asked, in the event the Court was inclined to transfer this case, that she be given an opportunity to conduct limited discovery before the motion was granted. During the case management hearing, counsel for Plaintiff informed the Court that Plaintiff sought information concerning the nature and extent of Defendants' advertising efforts in the state of Arkansas. As the Court informed counsel during the hearing, that information would certainly be relevant if the present motion under consideration concerned whether Defendants had the requisite minimum contacts with Arkansas necessary for personal jurisdiction. However, it does little to change any of the factors identified above. To the contrary, it largely confirms the Court's analysis that, apart from the fact that Plaintiff resides here, this litigation has few connections with Arkansas and even fewer reasons to be litigated here. As such, Plaintiff's request will be **DENIED**.

## III. CONCLUSION

**IT IS THEREFORE ORDERED THAT** Defendants' Motion to Transfer Venue (Doc. 10) is **GRANTED**. Plaintiff's request for limited discovery before transfer is **DENIED**. The Clerk is directed to immediately **TRANSFER** this action to the Northern District of Oklahoma.

**IT IS SO ORDERED** on this 21st day of September, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE